UNITED STATES, Appellee

v.

ROBERT L. WRIGHT, Private, U. S. Marine Corps, Appellant

6 USCMA 186, 19 CMR 312

No. 6817

Decided July 22, 1955

*Commander John W. Shields,* USN, argued the cause for Appellant, Accused.

*Commander George H. Rood,* USN, argued the cause for Appellee, United States.

GEORGE W. LATIMER, Judge:

This case reaches this Court upon a certificate of The Judge Advocate General of the Navy and the question arises out of the following sequence of events. The accused was charged with misappropriation of a Government motor vehicle. At his trial before a special court-martial, he entered a plea of guilty and after having been fully and fairly advised of his rights and the legal effect of his plea, he persisted in admitting his guilt. The Government did not present any testimony on the merits, but the president instructed the court-martial on the essential elements of the offense. After the court had returned a finding of guilty, the accused presented evidence in extenuation and mitigation of sentence. He elected to make unsworn answers to questions propounded by his counsel and, in the course of this examination, he stated:

"ACCUSED: At the time I misappropriated the vehicle I was very much under the influence of alcohol. I just lost my head. I just couldn't control myself. I really didn't know or understand what I was doing.

. . . . .

"DC: In other words, you would say that drinking has led to this mishap. In the future you will watch yourself?

"ACCUSED: Yes, sir. I will."

The court-martial thereupon sentenced him to a bad-conduct discharge, confinement at hard labor for four months, and partial forfeitures of pay and allowances for a like period. The convening authority approved the findings and sentence but suspended the execution of the bad-conduct discharge until the completion of appellate review. The officer exercising general court-martial jurisdiction concurred in the action of the convening authority, and the cause came on for hearing before a board of review. The board of review affirmed, with one member dissenting on the grounds that accused's unsworn statement was . inconsistent with his plea. Thereupon, counsel for the accused petitioned the board for

reconsideration and for the first time asserted that accused's unsworn statement, as set out above, established that his plea was improvidently entered. He reasoned that the court-martial, without request on his part, should have rejected his judicial confession and required the cause to be heard on its merits. The board of review, with the same member dissenting, affirmed its previous ruling and The Judge Advocate General of the Navy certified this question to us:

"Was the unsworn statement made by the accused after the findings so inconsistent with his plea of guilty as to require compliance with the procedure prescribed by Article 45(a), UCMJ and paragraph 70b (4), MCM, 1951?"

Article 45(a) of the Code, 50 USC § 620, provides:

"If an accused arraigned before a court-martial makes any irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty."

The Manual for Courts-Martial, United States, 1951, paragraph 75a, authorizes the following presentencing procedure:

"a. General.—After the court has announced findings of guilty, the prosecution and defense may present appropriate matter to aid the court in determining the kind and amount of punishment to be imposed.

"Matter which is presented to the court after findings of guilty have been announced may not be considered as evidence against the accused in determining the legal sufficiency of such findings of guilty upon review. If any matter inconsistent with a plea of guilty is received, or if it appears from any matter received that a plea of guilty was entered im-

providently, the court should take the action outlined in 70."

The action provided by paragraph 70 is as follows:

". . . If, after such explanation and statement, it appears to the court that the accused in fact entered the plea improvidently or through lack of understanding of its meaning and effect, or if the accused does not voluntarily withdraw his inconsistent statement, the court will proceed to trial and judgment as if he had pleaded not guilty."

We can first dispose of the contention that the accused entered his plea through lack of understanding of its meaning or effect. He was served with a copy of the specification some five days before arraignment. It involved the single offense of wrongful appropriation—taking an automobile temporarily without authority—and it was couched in ordinary and easily understandable language. He was represented by an officer, not a lawyer, who must have known the nature of the accusation, the effect of a guilty plea, and possibly some of the difficulties likely to be encountered in presenting the defense of intoxication. After the plea of guilty was entered, the president of the court very fully and fairly explained to both counsel and the accused the latter's right to enter a plea of not guilty and put the Government to its proof. In addition, the president explained the legal effect of the plea, and it appears from a colloquy between the court and counsel that the accused was informed the offense was of such a serious nature that it carried the penalty of two years' confinement, but because he was being tried by a special court-martial, six-months' confinement was the maximum period imposable. We do not find from those facts and circumstances that the accused lacked understanding of the meaning and effect of his plea.

If the plea was entered through improvidence, it is because the accused and his counsel did not have the foresight to realize that intoxication, of a degree which would impair his mental faculties to a point where he could not form a specific intent to take the vehicle, was a defense to the charge. Parenthetically, we note that we are immediately faced with what should be an omission fatal to the accused. His appeal to the board of review was automatic and he specifically waived any right to counsel. He did not prosecute an appeal to this Court and there is no showing or any assertion that he claims to be innocent of the offense or that he will not again plead guilty if a rehearing is granted. Surely before an appellate court should require a rehearing, an accused should make some representation that he has a meritorious defense and that his subsequent acts will not make a rehearing a hollow gesture. However, because in this instance a board of review member concluded there was a substantial question of law involved, we do not decide the question on this basis but we call attention of counsel to the necessity of making a proper showing when relief is requested.

Because improvidence, if it exists in this instance, is so closely interwoven with the claimed inconsistency, we treat them as one. The offense of wrongful appropriation requires a specific intent to deprive another of his property and we have held that intoxication of a certain degree and sort may be considered by the court-martial as affecting an accused's mental capacity to form that particular intent. However, voluntary intoxication alone is not a defense, for its degree must be such that the mental faculties of an accused have been so impaired that he cannot form that particular intent. In United States v. Backley, 2 USCMA 496, 9 CMR 126, we had this to say about intoxication:

". . . Evidence which goes no further than to indicate merely that the accused 'had been drinking,' or that he was 'under the influence of liquor,' is clearly insufficient to require an unrequested instruction on intoxication. At the far swing of the pendulum, testimony or other evidence suggesting that at the time of the alleged offense the offend-

er was the victim of a temporary drunken frenzy, or in what we once described as 'a state of ambulatory stupefaction', with equal clarity demands such an instruction. These limits, we believe, must be accepted by all. Indeed, it is only the ground between them which is productive of doubt and uncertainty—and perforce of petitions for review by this Court. As to this area, it may suffice to observe that the showing we contemplate as requiring instruction must certainly be one of *intoxication* —and, moreover, intoxication *of a certain degree and sort*, characterized by a discernible relationship to the potential absence of a capacity to entertain specific intent. Although intoxication, at least, must be fairly raised, it must be recognized that this condition involves aspects of quality and pitch, and that not every intoxication will necessarily be deemed by us to demand the instructions outlined earlier in this opinion."

From this quotation it is apparent that merely being under the influence of liquor is not sufficient to be a defense. We must, therefore, test the statement of the accused to determine if he makes a sufficient presentation to show the absence of a capacity to intend temporarily to deprive the Government of its vehicle.

It is to be noted that the record is absolutely barren of any suggestion that defense counsel at the trial was unaware of the law on intoxication. Moreover, the accused does not furnish information as to the extent of his intoxication. Neither does he specifically assert he did not intend to misappropriate the vehicle, or that his memory of the events was blurred. While he generalizes by saying he did not know or understand what he was doing, his assertion has a familiar ring. He was seeking to minimize the prospective sentence and he was informing the court that drinking led to his failure to understand the seriousness of his taking. The statement is no more than the usual version given by one who seeks to soften the punishment to be imposed, by assur-

ing a court that he would not have been in the hands of the law had he been fully conscious of the consequences. Of course, intoxication has a tendency to break down inhibitions, and sometimes criminal acts which would not otherwise have been committed are carried out. While there is a bare possibility that the accused was intoxicated to such an extent that he could not form a specific intent to commit an offense, he judicially admitted the contrary. We have no evidence to support his exculpatory statement and any finding based on the general statement made by him would be founded on sheer speculation and conjecture. In order to have a plea of guilty set aside by a court on a claim of intoxication, the showing should create at least reasonable doubts about the accused's capacity to use his mental faculties. Even a substantial impairment is not sufficient if the accused retains the capacity to form the specific intent to misappropriate and here we find no more than an untested assertion that had his mind not been clouded by liquor, the accused would have known and fully understood the seriousness of his act. That showing does not raise a defense—it does no more than offer an extenuating circumstance.

In this connection it is to be remembered that this was an unsworn statement made by the accused. He could not be cross-examined by counsel for the Government and he was not under the restriction of having to tell the truth or suffer the consequences. In military law, an unsworn statement is not considered evidence, and we would be overlooking the realities of the situation if we did not understand and appreciate that an accused under those circumstances would tend to exaggerate in his favor. Moreover, expansive statements cannot be narrowed or tested by cross-examination. Here the announced reason for the quoted statements was to lessen the punishment, not to deny the commission of the offense, and unless they were patently inconsistent with the plea, the court-martial was entitled to consider them for their stated purpose. Quite often, in the less serious offenses, there is an advantage to an accused in

admitting his guilt and throwing himself on the mercy of the court. Matters offered in mitigation are ordinarily intended to minimize the punishment and not to negate the presence of an element of the offense. This is not to say that if there is a genuine showing of a probability of a defense, a plea should not be rejected, but a judicial confession should not be treated so lightly that every unsworn statement in mitigation neutralizes its effect. Only a substantial showing should bring about that result. We, therefore, conclude that the accused cannot here escape the effect of his guilty plea, because he failed to present to the court such a degree of intoxication as to raise fairly that defense. A fair evaluation of his story in this instance is merely that he committed an offense which he thought might be considered less serious for sentencing purposes if he satisfied the court-martial that he acted while under the influence of liquor. That is not enough to relieve him from his plea. We, therefore, answer the certified question by stating that the court-martial was not required, *sua sponte,* to withdraw the plea and proceed with the trial on the merits.

Chief Judge QUINN and Judge BROSMAN concur.