UNITED STATES, Appellee

v̇

JAMES BATTS, Private, U. S. Army, Appellant

19 USCMA 521, 42 CMR 123

No. 22,678

July 2, 1970

*Captain Ira J. Dembrow* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Captain Karl J. Uebel,* and *Captain Howard L. Kaplus.*

*Captain John C. Lenahan* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Major William A. Pope, II.*

## Opinion of the Court

DARDEN, Judge:

This case presents two issues. One concerns the failure of the law officer orally to instruct the court on the mechanics of voting, he having relied instead on the contents of a sentence work sheet. In the absence of any showing that the court, in fact, considered such written advice on sentence during their deliberations, the procedure is prejudicially erroneous.

United States v Pryor, 19 USCMȦ 279, 41 CMR 279 (1970). We need not pursue this aspect further, however, because the findings of guilty in this case must also be set aside. The law officer erred to the prejudice of this appellant when, before accepting his guilty plea, he failed to inquire about information that was inconsistent with the plea.

The appellant pleaded guilty to three specifications of absence without leave

occurring during certain intervals between August 1967 and mid-April 1969. An out-of-court hearing preceded acceptance of the plea. At that time Batts acknowledged guilt of these offenses. In addition, Defense Exhibits C and D were marked, the law officer stating they would be accepted into evidence. After findings, the appellant testified, explaining that he went absent for he "just couldn't take harassment and everything."

After certain deletions the two defense exhibits were then read to the court. The former is a letter from the clinical director of the Northeast Florida State Hospital dated May 23, 1969. According to the director, Batts was committed as incompetent in Alachau County on November 16, 1967, and admitted to the hospital twelve days later. He escaped twice, the second time for good, as he was "discharged December 22, 1968 absent one year on escape status." During the period before his final departure from the hospital he was taking three hundred milligrams of Thorazine four times a day and was considered "actively psychotic." The latter defense exhibit is a military psychiatrist's evaluation of Batts dated June 6, 1969. This psychiatrist stated, "Throughout the periods of his three alleged AWOL's, it is my opinion that this man was able to distinguish and adhere to the right." He concluded Batts was competent.

Appellate Government counsel contend that the law officer's action is free of error, because neither the appellant nor his counsel has ever "attempted to purge the appellant of his guilt, to set up a defense, or to recant his plea"; that if a rehearing were ordered "there is no indication . . . the appellant would plead differently"; that Defense Exhibit D rebuts the conclusion of insanity; and that subsequent comments of counsel in argument reveal the evidence was designed for extenuation and mitigation use. Continuing the argument, counsel take the view that before an appellate court requires a rehearing, " 'an accused should make some representation that he has a meritorious defense and that his subsequent acts

will not make a rehearing a hollow gesture.' " United States v Wright, 6 USCMA 186, 189, 19 CMR 312 (1955).

In United States v Trede, 2 USCMA 581, 10 CMR 79 (1953), following the return of a verdict based on a guilty plea, defense introduced three witnesses in mitigation. One, a doctor assigned to the neuropsychiatric center at an air base, opined that while Trede wasn't mentally ill, his feeling was an " 'immature' reaction to prior false accusations." When questioned by the law officer the doctor asserted that at the time of the crime Trede "may well have been under an 'irresistible impulse.' " He would not express an opinion on whether the accused was so free from mental defect, disease, or derangement as to be able to distinguish right from wrong and adhere to the right. The law officer, concerned that insanity might have been raised, adjourned the court and referred the matter to the convening authority for further inquiry. Three officers were then appointed to examine the accused When the court reconvened sometime later, one of these officers testified that Trede could recognize right from wrong and could adhere to the right but was "actuated by an irresistible impulse." He later reconciled these apparent inconsistent statements by describing the accused as having " 'moral insanity.' " The defense then moved for a finding of not guilty because of insanity. Following a determination that neither party desired to introduce additional evidence, the law officer instructed the court on the issue of insanity, advising that they could retire to consider the question. A verdict that Trede was sane at the time of the crime was then returned.

In answer to certified issues, the *Trede* opinion contains a discourse on the action to be taken when insanity initially arises in mitigation. Note, however, that in this Court's judgment insanity was not placed in issue there, because the expression "moral insanity" is not insanity at all but " 'merely a perverted or abnormal condition of the moral system, where the mind is sound.' " United States v Trede, supra, at page 586.

522

That opinion nonetheless holds:

". . . Article 45 of the Uniform Code of Military Justice, 50 USC § 620, provides that if an accused, after a plea of guilty, sets up matters inconsistent with his plea, a plea of not guilty shall be entered in the record and the court shall proceed as though he had entered the latter plea.[1] Insanity at the time of the offense, if established, would be inconsistent with the plea of guilty, and if evidence suggesting that mental condition is introduced after finding, the matter of setting aside the plea becomes of importance. In that event, the law officer should not let the plea of guilty stand. He should set it aside or permit its withdrawal and hear evidence on an interlocutory basis. If he were to proceed on that basis and find the accused insane with no court member objecting, the case should be dismissed. On the other hand, if he finds the accused sane and there is no objection by any member of the court, he may then permit the case to proceed." [United States v Trede, supra, at page 587.]

Paragraph 123, Manual for Courts-Martial, United States, 1969, provides *inter alia* that:

". . . In arriving at its sentence, the court may consider any evidence with respect to the mental condition of the accused which falls short of creating a reasonable doubt as to his sanity."

This Court has held erroneous a refusal by a law officer to give an instruction that although evidence of the accused's mental condition was insufficient to excuse the offense, it might be considered in mitigation on sentence, because the mental condition of an accused may be a mitigating circumstance after the court has found him guilty. United States v Cook, 11 USCMA 579, 29 CMR 395 (1960).

The question before the Court, then, is whether insanity is raised by the two defense exhibits mentioned earlier.

In United States v Wright, 6 USCMA 186, 19 CMR 312 (1955), that accused was charged with the wrongful appropriation of a Government vehicle—an offense requiring a specific intent to deprive. After a guilty plea Wright, in an unsworn statement, declared that at the time of the crime he was under the influence of liquor, couldn't control himself, and didn't know what he was doing. The Court rejected the suggestion that the plea was thereby rendered improvident, saying, "We have no evidence to support his exculpatory statement and any finding based on the general statement made by him would be founded on sheer speculation and conjecture." (*Id.*, at page 190.)

In United States v Hinton, 8 USCMA 39, 23 CMR 263 (1957), an improvident plea contention was similarly rejected after counsel, in argument, described his client as a kleptomaniac. This Court reasoned: "In the context of the whole argument, these remarks are plainly intended as advocate's oratory, not a statement of fact or reasonable belief." (*Id.*, at page 42.)

The case at hand requires a different result. In November 1967, Batts was committed to a Florida State mental hospital as an incompetent. At that time he was considered actively psychotic. He left that institution without authority. Florida law provides for the hospitalization of one mentally ill on medical certification in a nonjudicial process in addition to commitment after a judicial determination.[2] Release of an involuntary patient committed by nonjudicial process, however, may result in a subsequent judicial proceeding, depending upon action by the head of the hospital involved. We can only speculate on the manner of appellant's commitment, however. In any event, this exhibit leaves no doubt that in the eyes

---

1. This part of Article 45a, Uniform Code of Military Justice, 10 USC § 845, is unaffected by the amendment to the Military Justice Act of October 24, 1968, Public Law 90–632, 82 Stat 1335.

2. Title 27, sections 394.21 and 394.22, Florida Statutes Annotated.

of Florida medical authorities Batts was incompetent.

The addition of Defense Exhibit D, a report of a psychiatric evaluation to the contrary, simply makes insanity a controverted question of fact. It was the court-martial's sole responsibility *finally* to decide the issue. Had the law officer followed the path laid out by this Court in United States v Trede, supra, that determination would have been made. It was not, and we must reverse the findings. Accordingly, the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army, who may order a rehearing.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

As the majority indicate, the trial judge must determine the necessity for further inquiry into accused's sanity. However, the failure of the judge "to intrude the insanity defense on . . . [his] own initiative" is not reversible error when the accused and his counsel are affirmatively opposed to the inquiry and desire to enter a plea of guilty and the evidence of insanity is equivocal. Cross v United States, 389 F2d 957, 960 (CA DC Cir) (1968). I conclude, therefore, that in the circumstances of this case the military judge committed no error, and that the pleas of guilty were providently entered.

So far as the sentence instructions are concerned, I perceive no prejudice in the procedure adopted by the judge and both counsel. See my dissent in United States v Pryor, 19 USCMA 279, 41 CMR 279 (1970). I am confirmed in my opinion by the fact that the sentence adjudged by the court-martial was less than that proposed by the accused in the pretrial agreement with the convening authority. I would, therefore, affirm the decision of the United States Army Court of Military Review.