UNITED STATES, Appellee

v

JAMES H. CAID, JR., Airman Basic, U. S. Air Force, Appellant

13 USCMA 348, 32 CMR 348

No. 15,923

November 23, 1962

*Major Quincey W. Tucker, Jr.*, argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Captain Donald W. Brewer* argued the cause for Appellee, United States. With him on the brief were *Colonel Merlin W. Baker, Lieutenant Colonel Emanuel Lewis,* and *Lieutenant Colonel Simpson M. Woolf.*

## Opinion of the Court

FERGUSON, Judge:

Brought to trial before a special court-martial upon a charge of wrongful sale of Government property and two specifications of larceny, in violation, respectively, of Uniform Code of Military Justice, Articles 108 and 121, 10 USC §§ 908, 921, the accused pleaded guilty to the alleged violation of Code, supra, Article 108, and to one of the alleged thefts. With respect to the remaining specification of larceny, he pleaded guilty to the lesser included offense of wrongful appropriation. He was found guilty in accordance with his pleas and sentenced to bad-conduct discharge, confinement at hard labor for six months, reduction to the grade of airman basic, and a fine of $300.00. The convening authority approved the sentence and ordered the accused confined in the 3320th Retraining Group, Amarillo Air Force Base, Texas. The board of review affirmed only so much of the sentence as provided for bad-conduct discharge, confinement at hard labor for four months, and forfeiture of $50.00 per month for four months. We granted accused's petition for review upon issues regarding the accused's plea of guilty to the lesser offense of wrongful appropriation, that portion of his sentence which adjudged a fine, and the propriety of certain

comments in the post-trial review. The facts necessary to the resolution of these questions will be set forth in connection with the disposition of each.

## I

We concern ourselves initially with the providence of accused's plea of guilty to wrongful appropriation in connection with an alleged larceny of an Air Force blue uniform and shirt belonging to one Airman Eaton.

After accused's plea was entered, the president of the court advised him of the elements of wrongful appropriation and of the fact that his plea constituted a judicial confession to that offense. Caid nevertheless persisted therein.

The prosecution elected to attempt proof of guilt of the charged larceny of the uniform. In support of the allegations of the specification, it adduced evidence tending to establish that, on January 12, 1962, Airman Eaton discovered his regulation blouse, trousers, and shirt to be missing from his locker. A search of the barracks was initiated but proved unsuccessful. It was recalled, however, that Airman Caid had been confined in the stockade on January 5, 1962, as the result of another court-martial. On January 15, the parties proceeded to the stockade and there examined Caid's effects in his presence. Eaton's uniform was discovered among them. Caid immediately volunteered that he had taken the allegedly stolen items, but claimed that he had only "borrowed" them for the purpose of attending his trial. He also stated that he had left a note to Eaton in the latter's room, informing him that he had taken the uniform and would return it. Eaton denied ever seeing the note. There was also evidence tending to establish that someone other than the owner had attempted to obliterate Eaton's name and serial number from the items in question.

The defense case rested upon the accused's sworn declarations. Testifying in his own behalf, he stated that he was without the blue uniform in which he was required to appear for trial before a summary court-martial. Unable to borrow money to redeem his own clothing from a local cleaning establishment, he sought to obtain the required items from others in the barracks. In the course of the latter endeavor, he entered Eaton's room but found it empty. Believing that Eaton would lend him a uniform if he were there, he removed the blouse, trousers, and shirt from Eaton's locker. He left a note advising him that he had taken the uniform and telling him "where it would be [*i.e.*, at the stockade] in case I didn't get back or have a chance to give it back to him." In contradiction to Eaton's testimony, accused declared that he did not see him until the former appeared at the stockade and recovered his property. Accused also denied obliterating Eaton's name and serial number from the allegedly stolen items. Of particular significance is the following testimony:

"Q. What were your feelings when you saw Airman Eaton?

"A. *I knew right then what he was there for because I remembered that I did have his uniform. When I saw him, I mean, I thought, right then, that I had his uniform. It was the first I remembered it, sir.*

"Q. *Did you believe you were caught in the commission of a crime at this time?*

"A. *No, sir.*" [Emphasis supplied.]

No effort was made by the court or counsel either to have accused withdraw his plea of guilty to wrongful appropriation or to abandon the position which he took in his testimony.

At the conclusion of the trial on the merits, the president instructed the court members that accused's plea constituted a judicial confession of all elements of the offense of larceny except the intent to steal, and "hence these elements are established by the accused's plea without the necessity of further proof." As noted above, the court members concluded that accused had, as he pleaded, wrongfully appropriated the uniform.

In United States v Hayes, 8 USCMA

627, 25 CMR 131, this Court said, at page 629:

"Not every wrongful taking constitutes a violation of Article 121. See United States v Norris, 2 USCMA 236, 8 CMR 36. The intent to deprive the owner of his property, either permanently or temporarily, must include a *mens rea*. Therefore, the mere 'borrowing' of an article of property without the prior consent of the owner does not make out either of the offenses defined in Article 121. Something more is required, and that something is criminal intention. Thus, if one visits the office of a friend, and, finding him absent, takes a book which he has come to borrow, leaves a note to that effect, and returns the book the next day, there is no intent to steal or misappropriate the book and, necessarily, no violation of Article 121."

We reaffirmed the validity of that holding in United States v Bridges, 12 USCMA 96, 30 CMR 96.

In the instant case, the accused's testimony presents a situation legally identical to the illustration which we gave in the *Hayes* case. He declared under oath that he merely "borrowed" Eaton's uniform, thinking the latter would not object. He left a note setting forth what he had done and giving directions on how to obtain the property's return if, as he expected, the summary court-martial adjudged a sentence to confinement. Finally, he stated that he did not believe he was "caught in the commission of a crime."

If credited, such testimony on the accused's part is totally inconsistent with the existence of the ▮ *mens rea* necessary to conviction of either larceny or wrongful appropriation. United States v Hayes, United States v Bridges, both supra. It was, therefore, the duty of the president to inquire into the providence of the plea of guilty to the lesser offense and, if accused did not disavow his testimony, to set it aside. Code, supra, Article 45, 10 USC § 845; United States v Epperson, 10 USCMA 582, 28 CMR 148; United States v Schneiderman, 12 USCMA 494, 31 CMR 80;

United States v Stanaway, 12 USCMA 552, 31 CMR 138; Manual for Courts-Martial, United States, 1951, paragraph 70*b*.

The findings of guilty with respect to specification 2 of Charge II are, accordingly, set aside.

## II

The second issue before us concerns the legality of that portion of the court-martial's sentence which ▮ adjudged a fine of $300.00. Appellate defense counsel contend that, as the president did not include a fine as a possible punishment in his instructions on the sentence, such must be set aside. See United States v Crawford, 12 USCMA 203, 30 CMR 203, and United States v Powell, 12 USCMA 288, 30 CMR 288. As we view this record, however, it appears that the members were properly made aware of their authority so to penalize the accused. Cf. United States v Genuario, 10 USCMA 260, 27 CMR 334.

Following the presentation of evidence in extenuation and mitigation, the president advised the court that the maximum sentence extended to bad-conduct discharge, forfeiture of two-thirds pay per month for six months, confinement at hard labor for a like period, and reduction to the lowest enlisted grade. In addition, he presented to the court members a "sentence work sheet" which had been examined by the accused and counsel for both sides. *Inter alia,* this document noted that Caid might be sentenced to pay a fine and that:

"A fine should not ordinarily be adjudged against the accused unless he was unjustly enriched by means of the offense of which he is convicted. The total monetary penalty imposable by a special court-martial by way of forfeiture, fine, or detention of pay or any combination thereof may not exceed two-thirds of the accused's pay (after deduction of contribution toward Class Q allotment) for a six months period."

Neither counsel objected to the use of those written instructions. When the sentence was announced, the prose-

cution suggested the court might have intended to impose a forfeiture rather than a fine. The president drew attention to the quoted provisions of the work sheet. Both counsel then agreed that such punishment was within the competence of the court, the accused's legally-qualified representative stating:

"The sentence work sheet authorizes a special court to adjudge a fine or forfeiture. It appears to be correct."

While we do not recommend the procedure of presenting instructions on the sentence through the medium of a work sheet, where, as here, all the parties to the trial have examined it in open court and agreed that it constitutes a part of the sentence advice, we are inclined to find no error in its use. Accordingly, under the circumstances of this case, we perceive no occasion to apply the principle which was discussed and laid down in United States v Crawford and United States v Powell, both supra.

### III

The third question before us deals with the sufficiency of the staff judge advocate's post-trial review in light of his comment that:

"(3) The ruling in United States v Cuen, 9 USCMA 332, 26 CMR 112, wherein the convening authority, in the exercise of his mitigating powers, may reduce a fine to a forfeiture, was considered. *But, an appropriate sentence is the sole province of the court, unless they grossly abuse their judicial powers. Therefore, although the fine adjudged is inappropriate, it is legal and within the court's discretion. Thus, approval of the court's sentence is recommended.*" [Emphasis supplied.]

The review is erroneous. In the first instance, approval of a sentence which is found to be inappropriate may not be recommended. Code, supra, Article 64, 10 USC § 864; United States v Jemison, 10 USCMA 472, 28 CMR 38. In the second, the substance of the quoted paragraph is misleading, as it advises the convening authority that he may not set aside or modify the court's sentence unless it has grossly abused its judicial powers. Such, of course, is not the law, for the question of the sentence to be approved is solely within the discretion of the convening authority. United States v Massey, 5 USCMA 514, 18 CMR 138; United States v Fields, 9 USCMA 70, 25 CMR 332.

The existence of the foregoing error, however, was detected by the board of review. As it related only to the fine of $300.00, it exercised its separate authority to purge the harm inherent in such comments by reducing the fine to forfeiture of $50.00 per month for four months, and approving only that penalty, confinement at hard labor for four months and the bad-conduct discharge. We deem such reassessment in this case sufficiently curative. United States v Peters, 8 USCMA 520, 25 CMR 24. Accordingly, the matter does not merit further consideration.

The findings of guilty with respect to specification 2 of Charge II are set aside. The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force. The board may reassess the sentence on the basis of the remaining findings of guilty or order a rehearing on the offense of wrongful appropriation and the penalty.

Chief Judge QUINN and Judge KILDAY concur.