UNITED STATES, Appellee,

v.

John H. SLUBOWSKI, Yeoman Third Class, U. S. Navy, Appellant.

No. 36,741.

NCM 77–2061.

U. S. Court of Military Appeals.

Oct. 22, 1979.

For Appellant: *Lieutenant Lawrence W. Muschamp*, JAGC, USN (argued).

For Appellee: *Lieutenant Christine M. Yuhas*, JAGC, USN (argued); *Commander T. C. Watson, Jr.*, JAGC, USN, *Lieutenant Commander Paul B. Thompson*, JAGC, USN (on brief).

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

2. Judge Perry has concluded that this opportunity to submit additional questions included the right to personally question the members of the court-martial panel. However, as I interpret

Opinion of the Court

COOK, Judge:

We granted review to determine whether the military judge erred to the prejudice of appellant by the procedure he employed during the *voir dire* examination of the court members and by submitting written instructions to the members on the elements of the offenses.

The first issue is raised in the following context. During an Article 39(a)[1] session, the military judge indicated he would follow a local rule of court which required defense and government counsel to submit proposed questions for the court members to him. He would, in turn, ask the questions. Although he indicated that he would not ask a question which he deemed to be improper, he stated, on the record, that he had no intention to limit counsel in submitting questions. He further indicated that he would permit oral questions from counsel if his own examination of the members, as a whole, warranted individual *voir dire*, and he would give counsel an opportunity to submit additional questions upon receiving the "questionnaires" from the court members, which would subsequently be made available to counsel. Defense counsel objected to the procedure and informed the trial judge that if he could not orally examine the members himself he would submit no questions. The members were subsequently examined by the trial judge and, as a result of this examination, two of the members were examined individually by the judge. Defense counsel responded in the negative when asked if he desired to submit any additional questions.[2]

Appellant submits that the procedure employed by the trial judge, which precluded him from directly questioning the court members, is inconsistent with paragraph 62*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

the colloquy between defense counsel and the military judge, counsel's questions were still subject to prior approval by the military judge with the exception of one member who was *voir dired* individually.

Thus, appellant reasons that corrective action is required because a local procedural rule cannot supercede the Manual provision. *See United States v. Kelson*, 3 M.J. 139 (C.M.A.1977). The Navy Court of Military Review agreed with the appellant that the procedure was improper, but held he had not been prejudiced. *United States v. Slubowski*, 5 M.J. 882, 886 (N.C.M.R.1978). We take a different view of the matter.

In *United States v. Parker*, 6 U.S.C.M.A. 274, 279, 19 C.M.R. 400, 405 (1955), which involved the curtailment of questioning by defense counsel rather than a requirement that the trial judge (then the law officer) ask the questions, Judge Latimer observed the following regarding the *voir dire* of court members:

The Manual for Courts-Martial, United States, 1951, paragraph 62*b*, authorizes the questioning of court members by counsel. It does not set out specifically the methods which may be employed, but Rule 24*a* [24(a)], Federal Rules of Criminal Procedure, offers a satisfactory solution. The rule provides as follows:

"RULE 24. TRIAL JURORS

"(a) Examination. The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper."

Chief Judge Quinn concurred with this comment, but Judge Brosman deferred judgment on the matter. *Id.* at 285, 19 C.M.R. at 411.

The operative language in paragraph 62*b* remains unchanged in the 1969 Manual:

"[T]he trial or defense counsel may question the court, or individual members thereof." Appellant and the Court of Military Review interpreted this language as requiring direct examination by counsel. However, the quoted language from *Parker* reflects that such language merely grants counsel the right to submit questions to the court members without defining the manner in which such questions should be asked.[3]

Appellant, however, urges the Court to reject the language in *Parker* as dictum and to adopt the ABA Standards which permit direct examination by counsel. *See* ABA Standards, Trial by Jury § 2.4 (1968). However, in the absence of a Manual provision, Article 36(a), Uniform Code of Military Justice, 10 U.S.C. § 836(a), expresses a preference for the federal procedure.

At the time *Parker* was decided, and still today, Fed.R.Crim.P. 24(a) permits the trial judge to question the members of a jury in lieu of counsel. *See Wagner v. United States*, 264 F.2d 524 (9th Cir. 1959), *cert. denied*, 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959). A local court's practice under which the judge alone conducts the *voir dire,* with the opportunity to counsel to submit his additional questions on points of inquiry, is valid. *United States v. Kline*, 221 F.Supp. 776 (D.Minn.1963). Contrary to appellant's position, therefore, we perceive no restriction upon his right to be tried by an impartial court by the procedure employed by the trial judge. Indeed, he was accorded the opportunity to submit any questions he desired; his decision to forgo that opportunity offers no basis for reversal on appeal.[4] *United States v. Fort,* 16 U.S. C.M.A. 86, 89, 36 C.M.R. 242, 245 (1966).

We turn now to the remaining assignment of error. During an Article 39(a) session, the military judge stated that he proposed to submit written instructions to the court members on the elements of the

---

**3.** Article 41, UCMJ, 10 U.S.C. § 841, provides for challenges, but it does not set forth any procedure to enforce such right of an accused.

**4.** We note that the procedure followed in the present case is contrary to the procedure fol-

lowed in the overwhelming majority of the cases before this Court. While we find the procedure consistent with existing military law, we do not intend to imply that it is preferable to oral examination by counsel.

offenses prior to the presentation of any evidence on the merits, in view of the number and complicated nature of the offenses which had been referred to trial. Defense counsel replied as follows:

Your Honor, the defense does so object to the procedure outlined by the military judge. We do so on the grounds that while cogent arguments possibly can be framed in support of such a procedure, it simply is not provided for by proper authority. Your Honor, in this regard we would invite the court's attention to paragraph 73 of the Manual for Courts-Martial wherein is indicated that the appropriate time for the court to give instructions is after closing argument as contrasted to the procedure just outlined which anticipates giving such instructions, at least partial instructions on the elements, to the members prior to the time evidence is adduced.

Although defense counsel objected to the timing of the instructions, he stated that he had no objection as to their contents. A copy of the document in question was attached as an appellate exhibit and the military judge subsequently submitted written instructions to the court members, with the following comments:

Now Mr. President, in view of the complexity of the charges in this case I find it propitious to be able to provide to the court members the elements of the offenses which are before the court. This is what is contained in Appellate Exhibit XV and I'd like the court members to take time now to read over these elements. There are also some definitions of terms that may be apropos that will arise during the course of the trial and which are germane to the findings in this case. I'd like you to read those over. I'd like for the members to take whatever time they deem appropriate to do that and let the bailiff know when you've done this and then we'll proceed with the trial. I think this will be of benefit to you in determining the issues in this case. Now, these will be the elements of the offenses which are set forth in the charges and specifications and you can

read them in conjunction with that. These are the matters which the government is going to be required to prove beyond reasonable doubt. So if you will now take time to do that I'll declare whatever recess it takes to accomplish that fact.

The court was recessed for the purpose of permitting the members to read the instructions and reconvened a short time later. Upon questioning by the military judge, the president of the court acknowledged that "all the members had an opportunity to read over the elements of the offenses." The members responded in the negative when asked if they had any questions.

In an Article 39(a) session conducted after both parties had presented evidence on the merits, the military judge discussed his proposed instructions. He specifically noted that he did not intend to "read" his earlier written instructions into the record and defense counsel offered no objection. He subsequently instructed the court:

Now then, prior to hearing any evidence at all in this case I provided each member with a copy of the elements of the offenses which are before the court. Those instructions which you now have are part and parcel of the instructions that I'm now giving you and you may consider them as such. The originals have been placed in evidence as an appellate exhibit and therefore, I do not intend to read them to you, but merely that they are now in the record and you can utilize them in determining the issues in the case.

At the conclusion of this instruction, he asked counsel if there was a request for any additional instructions; he received a negative reply from both government and defense counsel.

■ On appeal, the appellant has changed the focus of his objection to the instructions on the elements of the offenses. At trial, he objected to the timing of the instructions, but he now asserts that reversible error was committed by the failure of the military judge to orally instruct the

court members on the matter. As to the timing of the instructions, we note that paragraph 73, Manual, *supra*, refers to the military judge's duty to instruct the members "[a]fter closing arguments have been concluded." Whether this phrase is mandatory or merely recognizes the procedure employed in most trials need not detain us as it is apparent from the record that appellant has not been prejudiced by the timing of the instructions. Indeed, trial defense counsel did not object to the reasoning of the military judge, nor did he submit that the procedure would prejudice appellant. Rather, he asserted that it was inconsistent with the Manual. Thus, we do not now decide the import of the quoted language.

We have previously condemned the practice of submitting written documents in lieu of oral instructions. In *United States v. Caid,* 13 U.S.C.M.A. 348, 32 C.M.R. 348 (1962), the Court found no error, although a sentence included the imposition of a fine and the members were not orally instructed on the matter. The Court concluded the deficiency was removed when the president of the court noted, on the record, that the sentence work sheet referred to a fine and both counsel agreed that such punishment was authorized. The Court specifically stated in the opinion, however, that it was not recommending "the procedure of presenting instructions on the sentence through the medium of a work sheet." *Id.* at 352, 32 C.M.R. at 352.

■■■ The problems that can arise from the use of written instructions were demonstrated in *United States v. Pryor,* 19 U.S.C.M.A. 279, 41 C.M.R. 279 (1970). Trial counsel handed copies of a sentence work sheet to the court members. This sheet contained some instructions which were omitted from the military judge's oral instructions. The Court rejected the government's claim that the document filled the gap and distinguished *Caid* on the basis that the record in *Pryor* did not reflect that the court members had, in fact, considered the work sheet. However, although the Court has criticized the use of written instructions as a substitute for oral instructions, it has not estab-

lished a *per se* reversal rule. Indeed, in *United States v. Muir,* 20 U.S.C.M.A. 188, 43 C.M.R. 28 (1970), the Court affirmed where a written document was used to supplement deficient oral instructions because the trial judge specifically referred to the written document during his oral instructions. Our comments in *Muir* bear repeating:

We consider it preferable that the judge's instructions to the court be given "orally in the presence of counsel and the defendant." *United States v. Noble,* 155 F.2d 315, 318 (CA3d Cir) (1946). After a military judge has orally instructed a court on the procedures by which it determines a sentence, he may also furnish some or all of his instructions in writing for reference. *Oertle v. United States,* 370 F.2d 719 (CA10th Cir) (1966), certiorari denied, 387 U.S. 943, 18 L.Ed.2d 1329, 87 S.Ct. 2075 (1967).

Nonetheless, in the present case counsel for the Government accurately observe that the written form was not "simply handed to the court by trial counsel unaccompanied by a word of advice or caution." *United States v. Pryor,* supra, at page 280. Instead, this record shows that, after introduction of the form sheet and while instructions were still being given orally, the military judge specifically referred to the written instruction on voting procedure in a reminder to the court that the lightest proposed sentence should be voted on first. Under these circumstances, we think it reasonable to conclude that the court members did in fact make use of the entire instruction form in their consideration of the sentence in this case and, as a result, that Muir was unharmed. [*Id.* at 189–90, 43 C.M.R. at 29–30.]

■■■ The present case involves instructions on findings rather than sentencing. We do not perceive this difference to be a distinguishing factor from the cited authorities. Rather, the focus of the Court's inquiry has been to determine whether the record of trial properly reflects that the court members were made aware and con-

sidered all factors which must be included in the instructions. While written instructions can present problems which are not inherent in oral instructions, and are, therefore, not recommended, their use has not involved automatic reversal by this Court. In the present case, the defense was made aware of the contents of the document; the court was recessed to give the members an opportunity to read the document; the court members indicated they had no questions on the matter; the military judge made a specific reference to the document in his oral instructions prior to findings; and no one has challenged the accuracy or completeness of this document. Thus, the conclusion is inescapable that the members were informed of, understood, and knew they had to consider the elements of the offenses during their deliberations.

■ Finally, we note that the present case is clearly distinguishable from *United States v. Waggoner*, 6 M.J. 77 (C.M.A.1978), which condemned instructing on a matter in issue by reference to instructions that had previously been given on the subject at the trial of another case before the court-martial. The basis of that decision was the incompleteness of the record and the inability to judge the accuracy of such instructions. Here, a copy of the instructions was attached to the record as an appellate exhibit and was available to the parties at trial and the reviewing authorities. Accordingly, we must conclude that appellant has not been prejudiced. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *see United States v. Solomon*, 565 F.2d 364 (5th Cir. 1978); *Estes v. United States*, 335 F.2d 609 (5th Cir. 1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965).

The decision of the United States Navy Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.

PERRY,* Judge (concurring in part and dissenting in part):

The trial judge announced that he would conduct the initial questioning of prospective panel members and would incorporate any questions which the attorneys desired to submit to him in advance. At various times during the *voir dire* examination of panel members by the military judge, he inquired whether either counsel desired to have additional questions asked and, additionally, he asked the appellant's attorney whether he desired to additionally *voir dire* the panel. Appellant's attorney responded that he did not desire to ask additional questions. Thus, the appellant's counsel waived the right, clearly offered, to personally *voir dire* the panel. True, the judge announced at the outset that he would conduct the principal *voir dire* proceeding. As the majority state, that was not error. But here, the defense counsel was given a final opportunity to personally question the panel members and he declined. For that reason, I join with the majority in affirming as to that issue.

I cannot agree, however, that the military judge properly instructed the panel. The record discloses that, at the *beginning* of the trial, the judge handed the court members a list of instructions containing the nature of the offenses charged against the appellant and the elements of those offenses which the Government was required to prove. However, he gave *no* instructions on the elements of the offenses after closing arguments of counsel, nor did he at any time *orally* instruct the panel concerning the elements of the offenses contained in the charges. After the attorneys argued before the court panel, the judge orally instructed concerning the presumption of innocence and the requirement that the Government present proof of guilt beyond a reasonable doubt. Additionally, he referred the court members to the written instructions which he had given them when the trial commenced.

The appellant's attorney objected to the manner in which the judge instructed the panel on the ground that the Manual for Courts-Martial required that the military judge orally instruct the panel immediately prior to findings. Paragraph 73a, Manual for Courts-Martial, United States, 1969 (Revised edition), provides, in pertinent part: "*After closing arguments* have been concluded, the military judge, or the president of a special court-martial without a military judge, will give the court those instructions which are required by the law in the light of the circumstances of the case. He will instruct the court as to the elements of the offense charged in each specification and the elements of each included offense in issue." (Emphasis added.) Beyond any doubt, the timing of the instructions in this case violated the procedure mandated (*see* Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836) by this provision.

Additionally, while the Manual provision does not specifically provide that the instructions be orally given, I suggest that the only way a jury can be meaningfully instructed is by the spoken word. And the presiding judge is the person who is charged with that responsibility. The primary purpose of instructing the jury is to furnish them guidance in their deliberations to the end that they will arrive at a proper verdict. *Bird v. United States*, 180 U.S. 356, 21 S.Ct. 403, 45 L.Ed. 570 (1901); *Morris v. United States*, 156 F.2d 525, 169 A.L.R. 305 (9th Cir. 1946). This Court has emphasized the responsibility which rests upon the trial judge to insure that the court panel be properly instructed. *United States v. Graves*, 1 M.J. 50 (C.M.A.1975); *United States v. Verdi*, 5 M.J. 330 (C.M.A. 1978). I consider it imperative that the judge do this orally. There is considerable danger that the procedure utilized by the judge in this case may have deprived the appellant of a properly instructed panel. Indeed, some member(s) of the panel, without the impartial oral instructions by the judge concerning the elements of the offense, the definitions of terms and the other explanations contemplated by paragraph 73, Manual, *supra*, may have received their explanations from other court members or from the closing arguments of the prosecuting attorney or the defense attorney. I cannot agree with that approach.

I, therefore, dissent from that portion of the majority's opinion which approves the absence of oral instructions to the court panel.